Farris SHANBOUR, Plaintiff in Error,

v.

OKLAHOMA CITY, a Municipal Corporation,
and Dr. Jack Wilkes, Mayor of the City of
Oklahoma City, Defendants in Error.

No. 40765.

Supreme Court of Oklahoma.

Jan. 6, 1967.

Charles A. Shadid, Barry Albert, Oklahoma City, for plaintiff in error.

Roy H. Semtner, Municipal Counselor, William A. Collier, Asst. Municipal Counselor, James G. Hamill, Asst. Municipal Counselor, Oklahoma City, for defendants in error.

PER CURIAM.

This action involves an application by the plaintiff in error, who will be referred to as "petitioner", for permission to build a drive-in theatre in an area in Oklahoma City zoned as residential.

The population within the corporate limits of Oklahoma City exceeds 240,000 according to the 1960 Federal Decennial Census.

The City Planning Commission of Oklahoma City consists of nine members.

The legislative body of Oklahoma City consists of eight councilmen and a mayor who is entitled to vote.

Oklahoma City Revised Ordinances of 1960, § 13.15.07, provides, *in totidem verbis,* that an applicant for a non-conforming use of realty must file an application with the City Planning Commission for a special permit. The City Planning Commission is required within thirty days to transmit that application to the City Council with its report *as to the effect of the proposed use upon the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare.*

The ordinance further provides that after a public hearing upon said application the City Council may authorize the issuance of the permit requested. Drive-in theatre is one of the uses for which a special permit may be issued under this section.

The petitioner's above-described application was considered by the City Planning Commission, which "approved" it by a vote of four to three and transmitted it

along with four "Revocable Special Permits" to the City Council under cover of the following letter, dated June 14, 1963:

Subject:
Special Permit Drive-
in Theatre PC2502

"Attached hereto is the petition of Farris Shanbour for Special Permit to operate Drive in Theatre on unplatted propery at No. 6930 South Western Avenue.

"In the regular meeting of the Planning Commission held Thursday, June 13, 1963 it was voted to recommend the petition be approved."

Before the time set for public hearing on the application a written protest signed by more than twenty per cent of the owners of the land within the area proposed to be altered or by the owners of more than twenty per cent of the area of the lots immediately abutting either side of the territory included in the proposed change was filed with the City Clerk.

Following a public hearing the City Council by a vote of four to three denied the application.

The petitioner then commenced an action in the District Court of Oklahoma County for a writ of mandamus compelling the City of Oklahoma City to issue the special permit. The district court denied the petition. The petitioner has appealed to this Court.

The petitioner contends that three-fourths of the entire membership of the City Council did not vote against the allowance of the application and, therefore, it was mandatory upon the City to accept the recommendation of the City Planning Commission that the application be approved and to issue the special permit requested.

The City contends that the action of the City Planning Commission was advisory only, but, in the alternative, that it lacked compulsion because it was approved by less than a majority of the entire membership of the commission.

In support of his contention, the petitioner cites 11 O.S.1961, § 1436, providing:

"In any city of this State having a population in excess of two hundred forty thousand (240,000), according to the 1950 Federal Decennial Census or any succeeding Federal Decennial Census, any action of the city planning commission as set forth in any report, recommendation, order or decision of such planning commission, which, by law, is required to be submitted to the legislative body of such city for approval, disapproval or further action, may be overruled by such legislative body by, but only by, the vote of not less than three-fourths (¾) of the entire membership of such legislative body."

It will be first noted that the operation of 11 O.S.1961, § 1436 is confined to " * * any report, recommendation, order or decision of such planning commission, which *by law,* is required to be submitted to the legislative body of such city for approval, disapproval or further action * * *" (Emphasis added.) .

We must first ascertain what reports, recommendations, orders or decisions of the City Planning Commission of Oklahoma City are required by law to be submitted to the City Council of that city for that body's approval, disapproval, or further action.

A city planning commission has only such power and authority as are delegated to it by the statute and the ordinance. W. S. Dickey Clay Mfg. Co. v. Ferguson Investment Co., Okl., 388 P.2d 300, 303.

11 O.S.1961, § 1436 does not of itself confer any authority upon a city planning commission. Its application depends upon the existence of some mandate having the force of law which empowers the city planning commission to submit a *"report, recommendation, order* or *decision"* to the legislative body of the city for *"approval, disapproval or further action,"* upon something which can be described as "action of the city planning commission". (Emphasis added.)

We have not found any statute of this state or any ordinance of the City of Oklahoma City introduced in evidence which either delegates to the City Planning Commission of Oklahoma City the legislative power to change a zoning ordinance or which empowers that commission to take action or to make an authoritative "report, recommendation, order or decision" with respect to. the subject matter of this action.

11 O.S.1961, § 401, et seq., relates to buildings, zoning and city planning. Section 404 provides:

"The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days notice of the time and place of such hearing shall be published in an official paper or paper of general circulation in such municipality."

Section 405 provides:

"Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change, signed by the owners of twenty percent or more either of the area of the lots included in such proposed change, or by the owners of twenty percent or more of the area of the lots immediately abutting either side of the territory included in such proposed change, or separated therefrom only by an alley or street, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."

As they concern this case, these two sections simply mean that if certain owners protest in writing against the amendment of a zoning restriction, a public hearing must be had at which parties in interest and citizens shall have an opportunity to be heard, and at least fifteen days notice of the time and place of such hearing must be published in an official newspaper or a paper of general circulation in the municipality and such amendment can only be adopted by the favorable vote of three-fourths of all of the members of the legislative body of the municipality.

These sections restrict the power to amend, supplement, change, modify or repeal zoning regulations, restrictions, or boundaries to "[t]he legislative body of such municipality". They do not give to a planning commission the function of passing on applications for permission to depart from the uses prescribed in particular zones.

11 O.S.1961, §§ 1411 through 1435, apply to city planning in all cities which have a population of not less than 160,000 according to the 1940 Federal Census. Section 1413 empowers a municipality to create by ordinance a planning commission. Section 1417 provides that it shall be the function and duty of the commission to make and adopt a master plan for the physical development of the municipality,. " * * * [s]uch plan * * * shall show the commission's *recommendations* for the development of said territory * * * as well as a zoning plan for the control of the height, area, bulk, location, *and use of buildings and premises.* * * * The Commission may from time to time amend, extend or add to the plan." (Emphasis added.) As we read this section, it does not extend the power of a city planning commission beyond that of making recommendations.

One portion of § 1426 provides that the "planning commission may, from time to time, recommend to council amendments of the zoning ordinance or map or additions

thereto to conform to the commission's recommendations for the zoning regulation of the territory comprised within approved subdivisions". This probably represents an exception to the provisions of § 1422, authorizing the Council to transfer to the "planning commission which may be created under this Act all of the powers and duties * * * relative to the formulation of zoning regulations which are now authorized by law"; but also prescribing that the "Act shall not be construed as a general grant of powers to municipalities to create districts and regulate buildings and land uses therein, but such power shall continue as may be authorized by law". However this may be, in our view § 1426 confers no power on the Planning Commission to make a "report, recommendation, order or decision" approving or disapproving a request for permission to operate in a given zone a use forbidden in that zone by the general provisions of the zoning ordinance.

Another provision of this Act, § 1420, provides that, once the commission has adopted a master plan, no street, square, park, or other *public* way, ground or open space or *public* building or structure or government enterprise shall be constructed or authorized in such planned section until the location, character and extent thereof shall have been submitted to and approved by the commission. This section also provides that in the event any proposal is disapproved by the commission, such disapproval may be overruled in a designated manner by the City Council. This section appears to have no application to a proposal by a *private* owner for permission to use his property in a way forbidden by the general zoning ordinance.

We have thus found no statutory provision that can be regarded as conferring upon the Planning Commission of Oklahoma City power in respect to permitting uses not in conformity with uses allowed in a particular use district by the general zoning ordinance.

Oklahoma City Revised Ordinances of 1960, § 13.15.07, heretofore referred to, provides:

"An applicant for any of the buildings, or uses listed below to be located in a district from which they are prohibited by this ordinance shall file application with the City Planning Commission for a special permit. Said application shall be accompanied by payment at the Office of said Commission the required fee for said permit, the amount of which shall be as ordained in the General Shedule of Fees and Charges for Licenses, Permits and Administrative Services set forth in detail in Title 6 thereof. The City Planning Commission shall within thirty (30) days transmit such application to the City Council with its *report as to the effect of such proposed building or use upon the character of the neighborhood, traffic conditions, public utility facilities, and other matters pertaining to the general welfare.* Thereupon the City Council shall hold a public hearing upon such application and may authorize the issuance of the permit requested. The buildings and uses for which such special permits may be issued are listed as follows:

*       *       *       *       *       *

"(1) Drive-in Theatres * * *" (Emphasis added.)

To our minds, this seems clearly to be the only legislative provision upon which the petitioner can rely to secure his special permit.

The only authority conferred upon the City Planning Commission by this ordinance is to " * * * report as to the effect of such proposed building or use upon the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare * * *" The report is not to include *any* recommendation or other directive provision that, within the words of § 1436, supra, would require submittal to the City Council of the City of Oklahoma City for approval, disapproval or

further action on the report beyond holding a public hearing on such application. All that the report is to contain is factual information concerning the effect of the proposed use on certain specified matters. This information, together with that developed at the public hearing provided for by the ordinance, may be used by the City Council in reaching its decision as to whether the application should be granted or refused. The Planning Commission has no authority to make any recommendation at all, and nothing in its report could possibly be "overruled" by the City Council, because, if the report conforms to the function given the Planning Commission, there will be nothing there to accept or to overrule. Instead there will be factual information to be evaluated by the City Council, in connection with other information, in reaching its decision upon the application.

■ The report of the Planning Commission in this instance failed to comply with the ordinance. It did not contain *any* report, or *any* informtaion, upon the matters specified by the ordinance. In addition, it went entirely *beyond* the authority conferred by the ordinance, in *attempting to recommend the action to be taken upon the petition.* This the Planning Commission was unauthorized to do. In consequence, the report was ultra vires, and there was no authorized "report, recommendation, order or decision" to which § 1436, supra, could apply.

As has been shown, the approval of the City Planning Commission is not a prerequisite to the issuance of a special permit for the nonconforming uses listed in Oklahoma Revised Ordinance of 1960 § 13.15.07. But, the approval of the City Council is such a prerequisite. The petitioner sought the approval of the City Council. He failed to obtain it. The judgment of the trial court was correct.

Our decision herein renders unnecessary any further consideration of the other issues raised in the parties' briefs.

■

The judgment of the trial court is affirmed.

The Court acknowledges the services of LON KILE, who, with the aid and counsel of VESTER SONGER and JAMES BOUNDS as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to Ben T. Williams, Justice, for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, HODGES and LAVENDER, JJ., concur.